

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

EAG/GK

*271 Cadman Plaza East
Brooklyn, New York 11201*

February 27, 2020

By Hand and ECF

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: United States v. Tiffany Harris
     Docket No. 20-10 M

Dear Judge Levy:

  The government respectfully submits this letter in support of its application for the entry of a permanent order of detention as to the defendant Tiffany Harris. The defendant poses a danger to the community and a flight risk and should be detained pending trial.

I. Summary of Facts

  A. Campaign of Anti-Semitic Attacks[1]

  The defendant is charged with committing a series of anti-Semitic attacks during Hanukkah in Crown Heights, a neighborhood in Brooklyn, New York with a large Jewish population. As alleged in the complaint, on December 27, 2019, the defendant physically assaulted three different Orthodox Jewish women, without provocation, as the women were walking on public streets.

  The first attack occurred at the southwest corner of Eastern Parkway and Kingston Avenue. At approximately 12:40 a.m., the defendant approached a Jewish woman, who was walking alone, and, without warning, slapped her full in the face with an open hand.

---

[1]  The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or that it will seek to introduce at trial.

The second incident occurred approximately five minutes later, at the southwest corner of President Street and Kingston Avenue, just three blocks away. The defendant approached a different Jewish woman, who was walking with five other Jewish people, two of whom were visibly Orthodox, and hit her on the back of her head with an open hand and exclaimed, "Fuck you Jews." The third attack occurred minutes later at the same intersection. The defendant approached a third Jewish woman, who was walking alongside another visibly Orthodox woman, and, without any provocation, slapped her full on in the face with an open hand.

After one of the victims reported the incident, police officers with the New York City Police Department ("NYPD") located the defendant in the vicinity where the assaults occurred. All three victims positively identified the defendant at the scene as their assailant. All three victims reported that they suffered physical pain as a result of the defendant's attacks.

Following her arrest, the defendant was advised of her <u>Miranda</u> rights, which she agreed to waive. In a post-arrest statement, the defendant admitted that she had accosted and slapped three Jewish women. She further admitted that she said, "Fuck you Jews," during one or more of the assaults. The defendant explained that she knew the women were Jewish because she was in a "Jewish neighborhood" and because of how the women were dressed.

On December 28, 2019, the defendant was arraigned in New York Supreme Court in Kings County on charges including three counts of Assault in the 3rd Degree: With Intent to Cause Physical Injury, a class A misdemeanor, with a hate crimes enhancement, elevating the offense to a Class E felony. Consistent with recent New York State bail reforms, the defendant was released without bail later that day.

B. <u>Further Attacks</u>

Following her release on December 28, 2019, the defendant was arrested two additional times within the next three days. On December 29, 2019, the day after her release, the defendant was arrested and charged with approaching and punching in the face a Jewish woman who was carrying a 10-month-old child and holding the hand of a 3-year-old child while trying to cross a public street in the Eastern Parkway neighborhood in Brooklyn. As with the December 27 attacks, the defendant's violence occurred without warning and was entirely unprovoked. The victim was later treated for her injuries at a hospital. On December 31, 2019, the defendant was arrested yet again following a purported physical altercation with a social worker during a court-mandated meeting.

On January 1, 2020, the defendant was ordered to undergo a psychiatric evaluation. On January 3, 2020, the defendant was deemed a danger to the community and was civilly committed at a hospital in Brooklyn, where she remained until being brought into federal custody.

II.     The Defendant's Criminal History

The defendant has previously been convicted of state criminal offenses, including offenses involving violent behavior.  On February 27, 2018, the defendant pled guilty to Criminal Mischief: Reckless Property Damage Greater than $250, a class A misdemeanor, for which she was conditionally discharged.  Most recently, on December 10, 2019, the defendant pled guilty to disorderly conduct: flight and violent behavior, a violation, for which she conditionally discharged following the entry of an order of protection.

III.    Legal Standard and Procedure

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  18 U.S.C. § 3142(e).  While a finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), risk of flight can be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'"  United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Four factors guide the Court's determination of whether a defendant should be released on bail:

> (1)    "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . firearm . . .";
>
> (2)    "the weight of the evidence against the person";
>
> (3)    "the history and characteristics of the person, including . . . the person's character, . . . past conduct, . . . [and] criminal history, and record concerning appearance at court proceedings"; and
>
> (4)    "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g).

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffers. Id. at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or even for discovery." Id. (internal quotation marks omitted). Indeed, the Second Circuit has reversed district courts where they have not credited the government's proffer, including proffers with respect to a defendant's dangerousness. See, e.g., Mercedes, 254 F.3d at 437 ("Roman has twice been convicted of weapon possession – one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to Roman's dangerousness.").

IV. Argument

Detention is appropriate in this case, as no bail package will protect the community from the danger posed by the defendant and each of the four factors set forth in Section 3142(g) militate in favor of the pretrial detention.

A. The Defendant Poses a Danger to the Community

The defendant should be detained because she poses a substantial ongoing danger to the community. First, the conduct with which the defendant is charged – knowingly and willfully attacking three different women on public streets, without provocation, solely because they are Jewish – is serious. Through her anti-Semitic attacks, the defendant has demonstrated a total disregard not only for the lives of her victims, but also for the safety and well-being of the hardworking, law-abiding members of our community. Moreover, the confidence the defendant displayed by assaulting complete strangers, in public, regardless of whether they were alone or in groups, apparently without fear of law enforcement or any possible consequences, betray the defendant as an individual over whom the authority of the law and social norms have no sway.

The defendant's ongoing danger to the community is further underscored by her established pattern of hostile and violent behavior. Indeed, the very next day after her release from custody on December 28, 2019, the defendant was arrested and charged yet again for violently attacking another Jewish woman who was simply attempting to cross a public street with her husband and young children. Significantly, the defendant has prior charges involving violence and disorderly conduct, revealing that that her previous convictions have failed to deter her from indulging in a pattern of violence and intimidation.

The continuing nature of the defendant's criminal conduct demonstrates that she is responsible in part for the increased unrest and compromised quality of life the residents of the communities within Brooklyn have suffered as a result of the ongoing prevalence of hate crimes. Hate crimes such as those committed by the defendant have ramifications that extend far beyond the immediate injuries caused to particular victims.

4

Hate crimes strike at the very heart of our society. They attack the founding principles of our nation – which stress tolerance, respect, and the importance of individual rights – and breed fear, distrust and uncertainty in the community. As noted above, the concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" Millan, 4 F.3d at 1048 (quoting legislative history). That danger is particularly strong here in light of the defendant's open and notorious attempts to intimidate and harm people of the Jewish faith.

Finally, the evidence of the crimes with which the defendant is charged is strong. After the defendant committed the charged assaults, she was immediately apprehended by members of the NYPD, after which the defendant's victims all identified her at the scene as their assailant. Furthermore, the defendant herself admitted during a post-arrest interview that she had recognized her victims to be Jewish, that she assaulted them, and that she cursed at them and said, "Fuck you Jews."

Based on these four statutory factors, as applied to the facts of the case, a finding of dangerousness is warranted.

    B.    <u>The Defendant Poses a Risk of Flight</u>

The defendant also poses a significant flight risk in light of her established pattern of failing to attend mandated court appearances. According to the defendant's criminal record, bench warrants for the defendant have been issued on at least 17 occasions, 10 of which occurred in the past year alone.[2] In addition, the defendant has been charged with criminal contempt, on April 19, 2015. The risk of flight is particularly great where, as here, the defendant has a demonstrated a pattern of failing to adhere to court-mandated conditions.

---

[2] Relevant records indicate that bench warrants for the defendant were issued on the following dates: March 3, 2010, April 12, 2010, June 3, 2010, August 3, 2010, August 27, 2013, July 19, 2017, April 9, 2018, February 26, 2019, March 29, 2019, April 4, 2019, May 15, 2019, June 24, 2019, August 8, 2019, August 12, 2019, September 19, 2019, September 23, 2019, and December 31, 2019.

V.   Conclusion

      For the reasons set forth above, the government respectfully requests the Court order enter a permanent order of detention pending trial.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/ *Gillian A. Kassner*
Gillian A. Kassner
Assistant U.S. Attorney
718-254-6224

cc:   Clerk of Court (by hand and email)
      Defense Counsel (by hand and email)